

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/23/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMES POLIDORO,

       Plaintiff,

-against-

THE LAW FIRM OF JONATHAN D'AGOSTINO, P.C.,

       Defendant.

19-CV-1290 (ER) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

In a letter-motion dated May 26, 2022 (Pl. 5/26/22 Ltr.) (Dkt. No. 143), plaintiff seeks leave to "provide a Sur-Reply" in further opposition to defendant's summary judgment motion (Dkt. No. 126), which is otherwise fully briefed. For the reasons set forth below, the motion will be granted to the extent that plaintiff may submit the complete transcripts of two depositions previously submitted only in part, and otherwise denied.

**I.    BACKGROUND**

In this legal malpractice action, plaintiff James Polidoro claims that the firm now known as the Law Firm of Jonathan D'Agostino, P.C. (D'Agostino) failed to represent him competently in a personal injury action captioned *Polidoro v. Igal Hacking Corp.*, Index No. 0304368/2010 (N.Y. Supr. Ct., Bronx Co.) (the Bronx County Action), arising out of a June 29, 2007 motor vehicle accident. Plaintiff alleges, among other things, that D'Agostino negligently failed to establish, through appropriate expert testimony, that the 2007 accident caused the serious injuries of which he complained, including damage to his neck and back and a traumatic brain injury (TBI) that rendered him cognitively disabled and incapable of gainful employment.

Plaintiff is a prolific litigator. The Bronx County Action is one of at least four personal injury actions that he has filed since 2005. In at least three of them, plaintiff claimed that the subject accident caused damage to his neck and back and a TBI that rendered him cognitively

disabled and incapable of gainful employment. Moreover, the present action is one of at least three efforts that plaintiff has made to recover damages from legal or medical professionals whose performance in those personal injury suits disappointed him. Consequently, some discussion of plaintiff's various lawsuits is required as context, both for the pending summary judgment motion and for the present request to expand the summary judgment record.

      A.      **The 2003 Auto Accident**

In *Polidoro v. Deen*, No. ESX-L-5226-05 (N.J. Super. Ct., Essex Co.) (the 2005 Essex County Action), plaintiff sued for injuries arising out of a July 4, 2003 automobile accident. Plaintiff's original treating physician in that case, Dr. Enrique Hernandez, wrote in a May 21, 2004 report that plaintiff "sustained trauma to the head" in the accident, and diagnosed him with a "[c]losed head injury – cerebral concussion with prominent post-concussion syndrome with permanent posttraumatic headache syndrome, as well as, significant cognitive dysfunction indicating probable traumatic brain injury." *See* Compl., *Polidoro v. Alvarez-Prieto, et. al.*, No. 2:11-CV-1306-KM-MAH (D.N.J. March 8, 2011) (the Expert Witness Action), Ex. 3 (ECF 1-1, at 5-7), at 3. Dr. Hernandez further diagnosed injuries to the cervical and lumbar spine, and reported that plaintiff's symptoms included headaches, nausea, pain in the jaw, neck, shoulders, and back, numbness, tingling, anxiety, nightmares, and "impaired memory and impaired concentration." *Id*. at 1. Dr. Hernandez opined that plaintiff's injuries were "directly related to the accident of July 4, 2003." *Id*. at 3.

After Dr. Hernandez "went out on disability" in 2008, plaintiff retained Dr. Maria R. Alvarez-Prieto, M.D., as his "lead expert witness." Compl., Expert Witness Action, ¶¶ 7-8. In a report dated June 5, 2008, Dr. Alvarez-Prieto wrote that cognitive testing performed in her office revealed "significant impairment in immediate memory, visual facial construction, language function, attention function, and also delayed memory. His score was in the less than 1%

percentile [sic] rank." *Id*. Ex. 5 (ECF 1-1, at 26-28), at 2. That cognitive testing was performed on September 15, 2003. *See id*. Ex. 4 (ECF 1-1, at 13-14). The 2008 expert report further noted that plaintiff continued to complain of headaches, photophobia, neck and back pain, jaw pain, anxiety, and depression, and that he "was fired from his job on July 9, 2004 due to poor performance." *Id*. Ex. 5, at 2-3.

On April 8, 2009, plaintiff settled the 2005 Essex County Action for $25,500. Compl., Expert Witness Action, ¶ 20 & Ex. 15 (ECF No. 1-1 at 42). Two years later, he sued Dr. Alvarez-Prieto in the District of New Jersey, alleging that she failed to appear and testify at trial, thereby forcing him to accept a "deficient" settlement. *Id*. ¶¶ 15, 20, 29. Plaintiff also sued Dr. Ivan R. Dressner – the expert neurologist retained on behalf of defendant Deen in the 2005 Essex County Action – alleging that Dr. Dressler "created a fraudulent medical report." *Id*. ¶ 30.[1]

Plaintiff later dropped Dr. Dressler as a defendant but pressed the case against Dr. Alvarez-Prieto and her medical practice, alleging that they were liable to him for breach of express and implied contractual duties, fraud, and intentional and negligent infliction of emotional distress. *See* Second Am. Compl., Expert Witness Action (ECF. No. 21), ¶¶ 31-58. In this pleading, filed on November 6, 2012, plaintiff expressly alleged – again – that as a result of the *2003* accident, he "lost his career" and could not work. *Id*. ¶ 11. On January 7, 2014, the Expert Witness Action was dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. Mem. Op., Expert Witness Action (ECF No. 26), at 8.

---

[1] Dr. Dressler examined plaintiff on July 6, 2007, and reported that he found "no definite evidence of neurological dysfunction." *See* Compl., Expert Witness Action, Ex. 16 (ECF No. 1-1 at 43-45), at 3. According to plaintiff, however, Dr. Dressler's report was inconsistent with "the results of the testing he administered," and plaintiff could prove it by means of an audiotape he made of the examination. *Id*. ¶¶ 22-25 & Ex. 17. Plaintiff added that he had already "settled a fraud claim" against a chiropractor, "Dr. Fieberg," who treated him after the 2003 accident, because Dr. Fieberg "created a report contrary to an objective MRI." *Id*. ¶ 24. This Court has no further information concerning the claim against Dr. Fieberg.

B.     The 2007 Auto Accident

Meanwhile, on July 2, 2007, plaintiff retained D'Agostino in connection with the *2007* accident. Klein Decl. (Dkt. No. 126-3), ¶ 12 & Ex. E.[2] The retainer provided, among other things, that "[t]he cost of expert testimony necessary for trial shall be advanced by the Client prior to trial[.]" *Id*.

In his Bill of Particulars in the Bronx County Action, plaintiff alleged that as a result of the 2007 accident he sustained "various brain dysfunction injuries," as well as injuries to his jaw, neck, back, and shoulder, and that he lost his job "as a result of these injuries." *See* Errante/Calello Decl. (Dkt. No. 130-1) Ex. C, at 2.[3] On January 28, 2009, plaintiff was seen by clinical psychologist Reuven Weiss, who performed a neurocognitive evaluation and reported that plaintiff "demonstrated broad-based cognitive weaknesses mediated by the brain," which adversely affected his functioning in various spheres, "all as a result of the concussion related to the brain dysfunction after the [2007] car accident." Errante/Calello Decl. Ex. A, at 1. There is no indication in Dr. Weiss's report that he had any knowledge of plaintiff's 2003 accident, his

---

[2] This was three days after the 2007 accident occurred and four days before plaintiff saw Dr. Dressler in connection with his claim for damages arising out of the 2003 accident. There is no mention of the 2007 accident in Dr. Dressler's report, which suggests that plaintiff did not tell him about it.

[3] According to the written report of Steven D. Shedlin, M.Ed., CRC – plaintiff's vocational expert in the present malpractice action – plaintiff obtained a job as an outside sales representative with a beauty products company in September 2004 (two months after he was fired from his prior job). Errante/Calello Decl. Ex. L, at 1-2. Plaintiff was successful in that job until the 2007 accident, after which his sales diminished. *Id*. He was fired in 2009 and – according to Shedlin – "has not worked since." *Id*. at 2. Plaintiff testified to the same effect during his May 3, 2021 deposition in this action, explaining that after the 2007 accident, given his "fatigue and cognition problems," he "couldn't do what [he] was able to do before," and consequently lost his sales job in March of 2009. *See* Def. Ltr. dated Sept. 9, 2021 (Def. 9/9/21 Ltr.) (Dkt. No. 95), Ex. C, at 26:2-28:11. Plaintiff further testified that he tried getting new jobs, but was not successful, and consequently had not worked since March 2009. *Id*. at 28:1-13; *see also* Order dated Sept. 16, 2021 (9/16/21 Order) (Dkt. No. 102) at 2.

resulting treatment, or the expert opinions prepared in connection with the 2005 Essex County Action.

On October 2, 2013, ruling on cross-motions for summary judgment, the court in the Bronx County Action held that plaintiff was entitled to summary judgment as to liability against the defendant taxi company and taxi driver. Errante/Calello Decl. Ex. C, at 3. However, it also ruled that plaintiff "did not sustain serious injuries which were significant and consequential limitations which were also of a permanent nature," *id*. at 2, thus limiting plaintiff's recovery in the Bronx County Action to injuries or impairments "of a non-permanent nature which prevented him from performing substantially all of the material acts which constituted his usual and customary daily activities for not less than 90 days during the 180 days immediately following the accident." *Id*.[4]

On December 16, 2014, chiropractor Steve F. Guagliardo signed a "QEEG Assessment Report" regarding plaintiff. Errante/Calello Decl. Ex. B.[5] According to Dr. Guagliardo, plaintiff produced various brain waves representing (among other things) "Traumatic Brain Injury," "Cognitive Deficits," "Attention Deficits," "Poor Short Term Memory," "Confusion," "Slow Processing," and "Reduced Cognitive Efficiency." *Id*. The report contains no underlying data, no

---

[4] Under New York's "no-fault" law, a plaintiff cannot recover non-economic loss resulting from an auto accident unless he has suffered a "serious injury." N.Y. Ins. Law § 5104(a). "Serious injury" means, *inter alia*, "permanent consequential limitation of use of a body organ or member; significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment." N.Y. Ins. Law § 5102(d).

[5] Quantitative electroencephalogram (QEEG or qEEG) "is a modern type of electroencephalography (EEG) analysis that involves recording digital EEG signals which are processed, transformed, and analyzed using complex mathematical algorithms." L. Popa, *et al*, "The Role of Quantitative EEG in the Diagnosis of Neuropsychiatric Disorders," 13 J. Med. Life 1 (2020) at 8-15, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7175442/ (last visited June 23, 2022).

analysis, and no discussion of what caused any of these symptoms. *Id*. On December 29, 2014, plaintiff forwarded the QEEG results to attorney Glen Devora at D'Agostino, and asked him to have Dr. Weiss and Dr. Perel (another of plaintiff's physicians) "amend" their reports "to include these results." Errante/Calello Decl. Ex. F, at ECF p. 27.

On January 21, 2016, as trial approached, attorney Edward Pavia at D'Agostino wrote to plaintiff regarding various problems with his case: (i) that the injuries he claimed in the Bronx County Action were "identical" to those previously alleged in the 2005 Essex County Action and attributed in that forum to the 2003 accident; (ii) that during his deposition in the Bronx County Action plaintiff did not "mention the closed head injury" suffered in 2003, which defendants' counsel had discovered by reviewing a court order in the Expert Witness Action; (iii) that Dr. Guagliardo, who prepared the QEEG report, "has refused to testify on your behalf at trial," and (vi) that "Dr. Weiss' opinion as to your cognitive dysfunction related to the 2007 [accident] is based upon his belief that you had no prior head trauma." Klein Reply Decl. (Dkt. No. 135-1) Ex. P. On January 26, 2017, plaintiff replied, conceding that Dr. Hernandez "diagnosed me with a closed head injury" caused by the 2003 accident, but urging his counsel to rely instead on the work of another doctor, George Carnevale, who "clearly repelled the idea of me having a closed head injury [at that time] after administering more in depth and substantive testing[.]" Errante/Calello Decl. Ex. F, at ECF p. 21.[6]

On March 16, 2016, D'Agostino moved for leave to withdraw as plaintiff's counsel in the Bronx County Action on the ground that it was plaintiff's obligation under the terms of his retainer to advance the cost of expert testimony needed for trial, but that plaintiff had declined to do so. Devora Aff. (Dkt. No. 126-1) ¶ 10; Klein Decl. ¶ 17 & Ex. H. Plaintiff opposed the

---

[6] Dr. Carnevale's report is not in the record of this action.

motion and cross-moved, *pro se*, for an order requiring D'Agostino to "subpoena my experts to testify." Klein Decl. ¶ 18 & Ex. I, at ECF p. 4. That way, plaintiff wrote, "If the treating physicians choose to ignore the subpoenas and not show for trial, then there is clearly an actionable claim against them for any deficiencies or dismissal[.]" *Id*. Ex. I, at ECF p. 5. Plaintiff argued that he could not afford to pay expert witnesses because he had "not been able to work for 7 years," and that the expert witness provision in his retainer agreement should not be enforced because he was "under duress" from the 2007 accident when he signed it. Devora Aff. ¶ 11; Klein Decl. Ex. I, at ECF p. 4.

On April 11, 2016, the court granted D'Agostino's motion, denied the cross-motion, and stayed the case for 90 days so that plaintiff could obtain new counsel. Klein Decl. ¶ 19 & Ex. J. On September 21, 2016, the Bronx County Action was dismissed when Polidoro, who was still *pro se*, failed to appear for trial. *Id*. ¶ 20 & Exs. K, L.

### C. The 2017 Slip and Fall

In *Polidoro v. Shadrisrat*, No. BC716285 (California Super. Ct., Los Angeles Co.), filed on August 2, 2018 (the Los Angeles County Action), plaintiff alleged that he hurt his neck and back on January 20, 2017, when he slipped and fell in the bathroom at a vacation rental. *See* Def. 9/9/21 Ltr. Ex. B; 9/16/21 Order, at 3.[7]

### D. The 2018 Slip and Fall

In *Polidoro v. Popeye's Louisiana Kitchen*, No. ESX-L-008112-20 (N.J. Super. Ct., Essex County) (the 2020 Essex County Action), plaintiff sued a fast food restaurant for injuries sustained in another slip-and-fall, this one on December 15, 2018. *See* Klein Decl. in Supp. of

---

[7] On July 22, 2020, the court in the Los Angeles County Action tentatively ruled that plaintiff would be required to post a bond in order to proceed with the case. Def. 9/9/21 Ltr. Ex. B. This Court has no further information concerning the Los Angeles County Action.

Mtn. to Preclude (Dkt. No. 127-1) Ex. C, ¶¶ 1-6. In connection with the *Popeyes* action, plaintiff treated with neurologist Arien J. Smith, to whom he reported "dizziness, sensitivity to light, vomiting, memory loss, gait imbalance, and headaches," as well as severe neck and back pain. *Id*. Ex. G, at ECF pp. 6-7. In a May 1, 2019 report, Dr. Smith diagnosed "post-concussion syndrome" and various injuries to the spine, and wrote that since there were "no pre-existing conditions that were disclosed to us by the patient," the diagnoses were "a direct and proximate result of the 12/15/18 fall." *Id*. at ECF p. 10.

Plaintiff also saw Dr. Brian Greenwald, whose June 1, 2020 report stated that at the time of the 2018 accident plaintiff was "working as a driver" and was in a "good state of health and function," but could not return to work thereafter. Klein Decl. in Supp. of Mtn. to Preclude Ex. G, at ECF pp. 24, 26. Dr. Greenwald's examination revealed (among other things) "notable slowed cognition," *id*. at ECF p. 25, and he opined that plaintiff suffered "a traumatic brain injury on 12/15/18"; that his "symptoms and impairments are permanent"; and that his disability "is causally related to the traumatic brain injury he sustained on 12/15/18." *Id*. at ECF pp. 28-29.

On December 20, 2021, plaintiff served a vocational expert report in the 2020 Essex County Action, signed by Christino P. Reyes and Paul W. Thomas. Klein Decl. in Supp. of Mtn. to Preclude Ex. D. Reyes and Thomas stated that before the 2018 accident plaintiff had worked as a "driver," a "frozen yogurt shop owner" and in "sales," *id*. at 2-3; noted that his earnings in 2014 were $69,065, *id*. at 4; and calculated his lost earnings from the 2018 accident based on the assumption that his "pre-injury worklife expectancy" was "that of an average male with a baccalaureate degree and no disability." *Id*. at 5. On this basis, the Reyes/Thomas report estimated that plaintiff sustained a "loss of earning capacity" of $678,872 to $1,532,530 as a

result of the 2018 accident, which caused "traumatic brain injury and injury to his neck and back" and left him with a "cognitive disability." *Id*. at 1-3.[8]

### E.   This Action

In this action, filed on February 11, 2019, plaintiff alleges that defendant D'Agostino committed malpractice, breach of contract, and fraud. Second Am. Compl. (Dkt. No. 43) ¶¶ 4-10. According to plaintiff, the firm failed to follow his instructions to subpoena records and prepare witnesses, failed to "arrange for comprehensive expert testimony"; failed to have his existing experts "amend their reports"; failed to "subpoena experts"; failed to "admit" audio recordings into evidence;[9] fraudulently obtained leave to withdraw as his counsel in 2016, at which point it was too late for him to secure replacement counsel; and refused to turn over his file after withdrawing. *Id*. ¶¶ 11-21. On November 17, 2020, the Hon. Alison J. Nathan, then sitting as a United States District Judge, dismissed the contract claim (Dkt. No. 53), and on September 29, 2021, she dismissed the fraud claim (Dkt. No. 103), leaving only the negligence-based legal malpractice claim.

In September 2021, D'Agostino learned that – at some point after 2009 – plaintiff invested $250,000 in a chain of frozen yogurt shops, for which he served as "proprietor" and "hiring coordinator." *See* 9/16/21 Order at 4. Plaintiff lost the money when the shops failed. *Id*.

### F.   The Summary Judgment Motion

On March 25, 2022, after fact and expert discovery was completed, defendant D'Agostino filed a motion for summary judgment, supported by a Local Civil Rule 56.1 statement of

---

[8] This Court has no further information concerning the 2020 Essex County Action.

[9] In the Bronx County Action, as in the 2005 Essex County Action, plaintiff recorded the independent medical examinations (IMEs) performed by defendants' experts. He later urged D'Agostino to use the audiotapes to show that the IMEs were "quite superficial & quick." Errante/Calello Decl. Ex. F, at 2.

undisputed material facts, sworn statements by attorney Klein (who represents D'Agostino in this action) and attorney Devora (who represented plaintiff in the Bronx County Action), twelve exhibits, and a memorandum of law, totaling 104 pages. (Dkt. No. 126.) Defendant argues principally that the case should be dismissed because plaintiff's damages, if any, were proximately caused by his failure to appear for trial rather than by the law firm's alleged negligence. Def. Mem. in Supp. of Mtn. for Summ. J. (Dkt. No. 126-17) at 7-10.

On April 22, 2022, plaintiff filed his opposition papers, consisting of a memorandum of law, a sworn statement jointly signed by attorneys Errante and Calello, who represent him in this action, and thirteen exhibits, totaling 152 pages – but no Local Civil Rule 56.1 counter-statement, and no declaration or affidavit from plaintiff himself to authenticate his exhibits or attest to the facts recited by his counsel. (Dkt. No. 130.)[10] Plaintiff argues principally that D'Agostino effectively lost the Bronx County Action well before it moved for leave to withdraw by committing multiple instances of malpractice in developing the case, beginning prior to the summary judgment motions. *See* Pl. Mem. in Opp. to Mtn. for Summ. J. (Dkt. No. 130) at 21-24 (listing 21 "averments against the Defendant, sounding in Legal Malpractice"). Plaintiff's central averment is that D'Agostino "failed to secure Forensic Expert Witnesses to establish causation" or "guide" his existing witnesses to "properly state causation," either prior to filing a note of

---

[10] On April 25, 2022, plaintiff filed – without explanation and without seeking permission – a slightly revised set of opposition papers (Dkt. No. 131), which this Court struck as unauthorized and untimely. (Dkt. No. 134.) On May 2, 2022, plaintiff filed – without explanation and without seeking permission – a document entitled "Plaintiff's Rule 56.1 Statement of Material Facts As To Which There Are Genuine Issues To Be Tried," which this Court struck as unauthorized, untimely, and argumentative. (Dkt. Nos. 132, 134.) On May 6, 2022, plaintiff filed – again, without explanation and without seeking permission – a second document entitled "Plaintiff's Rule 56.1 Statement of Material Facts As To Which There Are Genuine Issues To Be Tried," (Dkt. No. 137), which this Court struck as unauthorized and untimely in an Order dated May 19, 2022 (5/19/22 Order) (Dkt. No. 42). Plaintiff made no effort to submit any declaration or affidavit in which he (or anyone else with personal knowledge) attested to any relevant facts or authenticated any exhibits.

issue in 2012 (which would have resulted in a better outcome on summary judgment) or, in any event, prior to trial. *Id*. at 3, 7, 19, 21-22. Plaintiff adds that "no other attorneys were willing to take over the claim due to its improper preparation and lack of causation." *Id*. at 25.[11]

In support of his thesis that D'Agostino negligently failed to establish causation, plaintiff submitted a portion of the expert report of D'Agostino's legal malpractice expert in this action, Bennett J. Wasserman, Esq., who – according to plaintiff – admitted the point. Pl. Mem. in Opp. to Mtn. for Summ. J. at 7; *see also* Errante/Calello Decl. Ex. F (one-page excerpt of Wasserman report). Plaintiff also submitted portions of the deposition testimony of his own legal malpractice expert, Jessica Di Bianca, Esq., and the full reports of his vocational expert, Mr. Shedlin, and his medical expert, Dr. Tanzid Shams. Errante/Calello Decl. Exs. E, K, L, M, N.

Mr. Shedlin, who was apparently not given the Hernandez or Alvarez-Prieto reports, wrote that plaintiff was "evaluated for a brain injury" in 2004 but "none was found." Errante/Calello Decl. Ex. L, at 1. He then opined – relying on the reports of Dr. Carnevale and Dr. Weiss, as well as his assumption that plaintiff had not worked since 2009 – that the 2003 accident did not impact plaintiff's ability to work, but that the "sequela from the 2007 incident precludes Mr. Polidoro from working in any competitive employment[.]" *Id*. at 2. Mr. Shedlin concluded that, as a proximate result of the *2007* accident, plaintiff sustained "a permanent and total loss of earning capacity for the remainder of his worklife expectancy." *Id*. at 3.[12]

---

[11] Additionally, plaintiff argues that D'Agostino used fraudulent methods to withdraw from its representation of plaintiff, thereby violating N.Y. Jud. Law § 487. *See* Pl. Mem. in Opp. to Mtn. for Summ. J. at 10-15. However, the fraud claim has been dismissed, and plaintiff has never pleaded any claim under Jud. Law § 487.

[12] The alert reader will have noticed that the Reyes/Thomas vocational report, which plaintiff served in the 2020 Essex County Action less than six months after he served the Shedlin report in this action, contradicts the Shedlin report in every significant particular. Shedlin stated that plaintiff did not work after 2009; Reyes and Thomas stated that plaintiff worked as a yogurt shop owner and driver, earning $69,065 in 2014. Shedlin presumed that plaintiff's "significant and

Dr. Shams, who never saw plaintiff, similarly relied on Dr. Weiss's report for the proposition that plaintiff suffered a TBI, resulting in "broad based cognitive weaknesses," as a "result of" a concussion sustained in the 2007 accident, Errante/Calello Decl. Ex. M, at 1, and on Dr. Carnevale's report, dated June 10, 2004, for the proposition that plaintiff's apparent cognitive deficits at that time might have been "related to his emotional status." *Id*. at 2. Without mentioning the Hernandez or Alvarez-Prieto reports, Dr. Shams opined that a medical expert could have testified, in the Bronx County Action, to "pre-morbid base findings" that would help show that plaintiff's claimed injuries were "causally linked to the 2007 accident." *Id*. at 3.

On May 6, 2022, D'Agostino submitted its reply papers, including a memorandum of law, the reply declaration of attorney Klein, and ten exhibits, totaling 125 pages (Dkt. No. 135). In response to plaintiff's contention that his former counsel was at fault for failing adequately to establish causation, defendant submitted evidence – some of it discussed above – designed to show the "difficulty of proving causation of injuries from the 2007 accident, or, indeed, any accident," in light of plaintiff's history of serial and inconsistent TBI claims against multiple defendants, arising out of multiple accidents, each of which he blames – in the lawsuit arising out of that particular accident – for his alleged inability to work. Def. Reply Mem. in Supp. of Mtn. for Summ. J. (Dkt. No. 135) at 5.

To counter plaintiff's reliance on an excerpt from the Wasserman report, defendant argues that plaintiff quoted the witness out of context, and attaches the entire report. Def. Reply Mem.

---

broad based cognitive weaknesses" were the "sequela" of the 2007 accident, and said nothing about the 2018 slip and fall (which he was not told about). Reyes and Thomas presumed that his "cognitive disability" was a result of the 2018 slip and fall, and said nothing about the 2007 accident (which, insofar as the record reveals, they were not told about). Shedlin stated that plaintiff sustained a "permanent and total" loss of earning capacity "for the remainder of his worklife expectancy" as a proximate result of the 2007 accident; Reyes and Thomas stated that up until the 2018 slip and fall, plaintiff's worklife expectancy was that of an average male with a college degree and "no disability."

in Supp. of Mtn. for Summ. J. at 4; Klein Reply Decl. Ex. O. To counter plaintiff's reliance on the Shams report, defendant submits the report of its own expert neurologist, Dr. Roger A. Bonomo, who examined plaintiff in 2021, found "no neurologic disability," and opined that plaintiff "would not have prevailed at trial for the '07 suit no matter who testified on his behalf." Klein Reply Decl. Ex. S, at 7. Defendant also notes that Dr. Shams himself conceded, at deposition, that the Bonomo report was "a good report" and that he had no disagreement with it. Klein Reply Decl. Ex. T.

      G.      **The Sur-Reply Motion**

On May 10, 2022, plaintiff filed his first letter-motion seeking leave to submit sur-reply papers in further opposition to D'Agostino's summary judgment motion. (Dkt. No. 139.) Because that letter-motion failed to identify the "new information" contained in defendant's reply papers, to which plaintiff wished to respond, I denied it without prejudice to refiling if plaintiff could "(i) clearly identify the matters presented to the court for the first time in the opposing party's reply, that prompt his request; and (ii) succinctly describe the new argument and/or evidence he wishes to present in response thereto." 5/19/22 Order at 9 (internal quotation marks and citation omitted).

On May 26, 2022, plaintiff again requested leave to file sur-reply papers. He argues that he should be "permitted to offer proof" that:

- Dr. Shams "did not adopt Dr. Bonomo's findings, as the Defense newly proffers";
- Plaintiff "was explicit about his prior accident," advising D'Agostino "on numerous occasions [that] he was in a prior accident in 2003"; and
- Plaintiff was also "explicit to Defendant . . . about the suit against Marie Alvarez-Prieto[.]"

Pl. 5/26/22 Ltr. at 1. Plaintiff does not describe the proof he intends to offer on any of these points. He goes on to assert (without, apparently, seeking leave to file any new "proof") that:

13

- Defendant has "newly introduced the argument that Plaintiff's injuries stem from [the] 2003 accident";

- Plaintiff "rejects the contention" that he "failed to answer in the affirmative at his deposition"; and

- Plaintiff "has no obligation and/or burden to recall the names of attorneys that shunned the idea of taking over the original case."

*Id*. at 2.

Defendant opposes the sur-reply motion on the ground that "each of the matters listed by Plaintiff was in response to arguments raised by Plaintiff in opposition to the motion for summary judgment." Def. Ltr. dated May 27, 2022 (Dkt. No. 114), at 1.

## II. ANALYSIS

"Courts grant leave to file sur-replies when they address arguments raised for the first time in a reply brief." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 2022 WL 329211, at *3 (S.D.N.Y. Feb. 3, 2022); *see also DT v. Somers Cent. Sch. Dist.*, 2009 WL 10706891, at *2 (S.D.N.Y. Feb. 11, 2009) (a sur-reply is appropriate if the party opposing the underlying motion would otherwise be "unable to contest matters presented to the court for the first time in the opposing party's reply") (quoting *Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001)), *aff'd*, 348 F. App'x 697 (2d Cir. 2009).

If, however, the reply papers merely respond to points raised in opposition to the underlying motion, fairness does not ordinarily demand further briefing. *See Somers Cent. Sch. Dist.*, 2009 WL 10706891, at *2 (no sur-reply needed where "defendants did not raise any matter 'for the first time' in their reply papers" but merely "responded to matters that were raised for the first time in plaintiffs' response papers"); *Travelers Ins. Co. v. Buffalo Reinsurance Co.*, 735 F. Supp. 492, 495-96 (S.D.N.Y.) (no sur-reply where, "[a]lthough defendants' reply papers addressed issues not raised in its moving papers, each point in the reply brief directly responds to

an issue raised in Travelers' opposition papers"), o*rder vacated on reconsideration, on other grounds*, 739 F. Supp. 209 (S.D.N.Y. 1990).

Here, defendant is largely correct that its reply papers merely "responded to matters that were raised for the first time in plaintiffs' response papers." *Somers Cent. Sch. Dist.,* 2009 WL 10706891, at *2. Defendant made a narrow, surgical summary judgment motion, premised on the undisputed fact that the court ultimately dismissed the Bronx County Action – months after D'Agostino withdrew – because plaintiff failed to appear for trial. It was plaintiff who chose, in his opposition papers, to broaden the focus and place at issue the law firm's pre-withdrawal conduct, including its alleged failure to procure expert evidence establishing that the 2007 accident caused plaintiff to suffer a TBI and experience the cognitive difficulties and other injuries that he alleged. Having raised those issues – and having supported his arguments with the Shams report – plaintiff can hardly complain that D'Agostino responded with the Bonomo report, which comes to a different conclusion about the possibility of establishing causation, and with Dr. Shams's deposition testimony to the effect that he had "no disagreement" with the Bonono report. Klein Reply Decl. Ex. T. However, if plaintiff believes that defendant quoted an excerpt of Dr. Shams's deposition testimony out of context, he may submit the complete transcript of that deposition (including exhibits).

In its reply brief, defendant does not accuse plaintiff of failing to disclose the 2003 accident. To the contrary: defendant submitted attorney Pavia's January 21, 2016 email concerning the difficulties of trying the Bronx County Action. Klein Reply Decl. Ex. P. In that email, Pavia *acknowledged* that plaintiff discussed the 2003 accident in his deposition, but noted – accurately – that plaintiff testified to neck, back, and jaw injuries sustained in the 2003 accident, without mentioning "the closed head injury." *Id*.; *see also* Klein Reply Decl. Ex. R, at

140:10-14 ("Q. What parts of your body were injured as a result of that accident? A. My neck. What else? My jaw, my back, um, that's all I really recall."). Similarly, defendant does not accuse plaintiff of concealing the Expert Witness Action altogether. To the contrary: in his January 21, 2016 email, attorney Pavia expressed dismay upon learning that plaintiff's claim, in that action, was that he suffered injuries "identical" to those alleged in the Bronx County Action, including a "closed head injury." Klein Reply Decl. Ex. P.[13] However, if plaintiff believes that defendant has not done justice to his deposition testimony in the Bronx County Action, he may submit the complete transcript (including exhibits).

The remainder of plaintiff's letter-application similarly fails to identify any arguments that were "raised for the first time in [defendant's] reply brief," *Ripple Labs,* 2022 WL 329211, at *3, (S.D.N.Y. Feb. 3, 2022), and as to which fairness demands further extending the briefing schedule. Indeed, in arguing that defendant "newly introduced the argument [that] Plaintiff's injuries stem from a 2003 accident," Pl. 5/26/22 Ltr. at 2, plaintiff appears to misunderstand the thrust of D'Agostino's argument. The firm does not contend that plaintiff suffered a TBI and disabling cognitive symptoms as a result of the 2003 accident. Rather, it submitted evidence of plaintiff's *claims* that he suffered those injuries as a result of the 2003 accident (claims that plaintiff continued to make, in two separate lawsuits, even after filing the Bronx County Action) to show that, in light of plaintiff's conflicting allegations, he could not have won the Bronx County Action – and thus cannot prevail on his malpractice claim – *regardless* of which accident (if either of them) actually caused those injuries. See *Diamond v. Sokol*, 468 F. Supp. 2d 626, 633 (S.D.N.Y. 2006) ("New York law requires that the plaintiff [in a legal malpractice action] be

---

[13] I note as well that defendant submitted Pavia's January 19, 2016 email only after plaintiff submitted – in his opposition papers – what appears to be his *responding* email, dated January 26, 2016. Errante/Calello Decl. Ex. F, at ECF pp. 21-22.

able to meet the 'case within the case' requirement, demonstrating that 'but for' the attorney's conduct the client would have prevailed in the underlying matter.") (cleaned up).[14] Defendant's introduction of plaintiff's serial and inconsistent allegations as to injury and causation was thus a fair response to plaintiff's opposition papers, and does not require that plaintiff be given another opportunity for argument.

### III. CONCLUSION

For the reasons set forth above, plaintiff's letter-motion seeking leave to file sur-reply papers in further opposition to defendant's summary judgment motion is GRANTED to the extent that plaintiff may submit the complete deposition transcripts, including exhibits, of Dr. Shams (in this action) and plaintiff himself (in the Bronx County Action), and otherwise DENIED. Should plaintiff choose to submit that evidence, he must do so no later than June 30, 2022, *without further argument*. The Court will not accept any sur-sur-reply papers.

Dated: New York, New York
       June 23, 2022

SO ORDERED.

_____
BARBARA MOSES
United States Magistrate Judge

---

[14] By the same token, plaintiff's allegations in the 2020 Essex County Action, blaming his alleged TBI and cognitive decline on yet another accident (and claiming that he was cognitively *unimpaired* until 2018), severely undercut the claims that that he made in the Bronx County Action and now makes in this Court.